cost, does not affect the rights of the parties. The consideration was the voluntary abandonment of the contract by the Sovereign Company on that condition. This left a balance owing to the Sovereign Company from appellant Hildebrand of less than the remaining 5 per cent., and by the express terms of the contract that did not become due and payable from appellant Hildebrand to the Sovereign Company until the final payment was made to him by the city.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellants to abide the event. All concur.

---

CONCKLIN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. March 15, 1912.)

1. RAILROADS (§ 69*)—ACQUISITION OF RIGHT OF WAY—DEEDS—TITLE ACQUIRED.

A deed of a strip of land to a railroad company, "to have and to hold the same * * * forever" for the purposes of the extension of a railroad, as directed by statutes, etc., vests the company with a fee.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 161–165; Dec. Dig. § 69.*]

2. EASEMENTS (§ 10*)—PRESCRIPTION.

User of grounds thrown open to the public in connection with the use of a public or quasi public building is ordinarily permissive, and not adverse, unless there is a distinctive act, indicating a separate and exclusive use under a claim of right, sufficient to notify the owner, not only of the user, but of the claim of right.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 27–33; Dec. Dig. § 10.*]

3. EASEMENTS (§ 10*)—PRESCRIPTION.

The user of a way across a railroad right of way, without any act indicating a separate and exclusive use under a claim of right with notice to the company, is permissive, and not adverse, and does not ripen into a prescriptive right of way.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 27–33; Dec. Dig. § 10.*]

4. EASEMENTS (§ 10*)—WAYS—PRESCRIPTION.

The failure of a grantor of a railroad right of way and his successor in title to comply with the covenant in the deed of the right of way to make and maintain sufficient fences on both sides of the right of way cannot be the foundation for a prescriptive right, and the use by his successor of a way over the unfenced right of way is not adverse, and will not ripen into title by prescription.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 27–33; Dec. Dig. § 10.*]

5. RAILROADS (§ 72*)—LIMITATION OF ACTIONS (§ 66*)—DEEDS OF RIGHT OF WAY—COVENANTS.

A covenant by a grantor of a railroad right of way, whereby he agrees for himself, heirs, and assigns to make and maintain sufficient fences on both sides of the right of way, is an affirmative one, running with the land, and limitations do not commence to run on a breach thereof until demand and refusal.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 168–178; Dec. Dig. § 72;* Limitation of Actions, Cent. Dig. §§ 353, 375; Dec. Dig. § 66.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Dutchess County.

Action by Emily S. Concklin against the New York Central & Hudson River Railroad Company. From a judgment of dismissal, entered on a decision of the court rendered after a trial, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

Hersey Egginton (H. S. Concklin, on the brief), for appellant.
Robert Wilkinson, for respondent.

HIRSCHBERG, J. This action is brought to enjoin the defendant from maintaining a fence across a right of way which the plaintiff claims to have acquired by prescription over the defendant's railroad premises in the village of Amenia, Dutchess county. The facts are not disputed. One John B. Barker is the common source of title to all the property involved. In January, 1852, he conveyed a narrow strip of land, 1,568 feet long, running through his farm, to the New York & Harlem Railroad Company. The deed of conveyance contained the following habendum clause:

"To have and to hold the same to the said parties of the second part [the railroad company], their successors and assigns, forever, for the purposes of the extension of the New York & Harlem R. R., as directed in the several acts of the Legislature of the state of New York in relation thereto."

In addition to this habendum clause and to the usual covenants of title, the deed contained a covenant whereby the grantor agreed, for himself, his heirs, and assigns, to make and maintain good and sufficient fences on both sides of said strip of land, and a covenant whereby the grantee agreed forever to—

"make and maintain good, sufficient, and convenient crossing places across said railroad to and from the land of the said party of the first part on each side of said strip of land so taken for said railroad, pursuant to the acts of the Legislature in relation thereto."

By lease made in 1873 for a period of 401 years, the respondent became the lessee of the New York & Harlem Railroad Company, and as such is now in possession of the property in question, operating a steam railroad over the same, and maintaining a station for its passengers on a part thereof in the village of Amenia. In September, 1852, Barker conveyed approximately half an acre lying south of and adjoining the railroad property to appellant's predecessor in title. The dwelling thereon now used by the appellant as a residence was erected in 1853.

In 1856 Barker conveyed a parcel of land lying west of and adjacent to appellant's premises and southerly of and adjoining the railroad property to Enoch G. Caulkins. Those premises lie between the plaintiff's lot and a public highway known as Mechanic street, which crosses the railroad tracks at right angles and leads into the village of Amenia. The Caulkins property is now owned by one Lewis E. Barton, who maintains a hotel thereon.

The covenant to fence, made by plaintiff's predecessor, has never been performed. During the last 50 years appellant's predecessors and

the appellant, as well as their servants and visitors, have reached said highway from the premises by walking along the southerly side of said railroad premises and across the same in front of the station to the highway. This user has been open, visible, continuous, peaceable, uniform, uninterrupted, and with the knowledge of the respondent. A similar use of the railroad property seems also to have been made by the owners of the premises adjoining the appellant's property. In 1906 the respondent built a fence along the south line of its property, thereby closing the alleged right of way. From the judgment refusing to enjoin the maintenance of that fence, the plaintiff appeals.

[1] It has been suggested that, as a railroad company possesses merely an easement for railroad purposes, and that as the land reverts to the original owners · upon the abandonment of the railroad franchise, it is incapable of conveying a fee, and hence the presumption of a lost deed as the basis of a prescriptive right cannot be indulged against it. See Roberts v. Sioux City & Pacific R. R. Co., 73 Neb. 8, 102 N. W. 60, 2 L. R. A. (N. S.) 272, 10 Ann. Cas. 992; Southern Pacific R. R. Co. v. Hyatt, 132 Cal. 240, 64 Pac. 272, 54 L. R. A. 522; Missouri, K. & T. Ry. Co. v. Watson, 74 Kan. 494, 87 Pac. 687, 14 L. R. A. (N. S.) 592; Northern Pacific Ry. Co. v. Ely, 197 U. S. 1, 25 Sup. Ct. 302, 49 L. Ed. 639; Northern Pacific Ry. v. Townsend, 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044. In the case at bar, however, the respondent did not acquire the property in question by condemnation proceedings in the exercise of the power of eminent domain. The deed from Barker vested it with the fee. Nicoll v. N. Y. & E. R. R. Co., 12 N. Y. 121; Kenney v. Wallace, 24 Hun, 478; Beal v. N. Y. C. & H. R. R. R. Co., 41 Hun, 172; Yates v. Van De Bogert, 56 N. Y. 526. The statement in the habendum clause that the property was held for railroad purposes did not limit the fee conveyed. Vail v. L. I. R. R. Co., 106 N. Y. 283, 12 N. E. 607, 60 Am. Rep. 449; Nicoll v. N. Y. & E. R. Co., supra. It would seem, therefore, that the respondent could convey the fee of the property.

[2] I do not, however, deem it necessary to determine whether the respondent could dispose of that property in such a manner as to interfere with the proper exercise of its public franchise, or whether an easement could be acquired by prescription in such premises, if said easement in any way interfered with the proper exercise of such franchise, because I do not believe that the appellant has fairly established that her user of the premises in question was adverse. Her contention is that the open, visible, notorious, peaceable, continuous, and uninterrupted use of the way for 50 years raises a presumption of adverseness, unless affirmatively shown by the respondent to have been by license, and cited in support of such contention are Hammond v. Zehner, 21 N. Y. 118, Colburn v. Marsh, 68 Hun, 269, 22 N. Y. Supp. 990, affirmed on opinion below 144 N. Y. 657, 39 N. E. 857, Hey v. Collman, 78 App. Div. 584, 79 N. Y. Supp. 778, affirmed 180 N. Y. 560, 73 N. E. 1125, Miller v. Garlock, 8 Barb. 153, Nicholls v. Wentworth, 100 N. Y. 455, 3 N. E. 482, Winne v. Winne, 95 App. Div. 48, 82 N. Y. Supp. 647, 88 N. Y. Supp. 625, Townsend v. Bissell, 4 Hun, 297, Law v. McDonald, 9 Hun, 23, and Schwer v. Martin, 97 S. W. 12, 29 Ky. Law Rep. 1221, 7 L. R. A. (N. S.) 614. Without analyzing

these cases in detail, it is sufficient to say that they are distinguishable from the case at bar, in that they present instances where the right was acquired over property devoted solely to private purposes, and where consequently less definite or distinctive acts might be held sufficient to raise a presumption of adverse user than would be required in order to establish a right of way over unfenced property appurtenant to a railroad station and commonly and openly frequented by the general public.

[**3**] User of grounds thrown open to the public, in connection with the use of a public or quasi public building, is ordinarily to be considered permissive, and not adverse, unless there be some distinctive act indicating a separate and exclusive use under a claim of right sufficient to notify the owner, not only of the user, *but of the claim of right.* See Jones on Easements, § 285, and cases cited. While there do not seem to be any authorities precisely in point with the facts in the case at bar, the trend of judicial decisions seems to be towards a holding that such a user as the plaintiff's is not sufficient to create a prescriptive right of way over property devoted to a public purpose and freely resorted to by the public. The record contains no evidence of any decisive act upon the plaintiff's part indicating a separate and exclusive use from which knowledge of a claim of right could be presumed by the respondent. Kilburn v. Adams, 7 Metc. (Mass.) 33, 39 Am. Dec. 754; Inhabitants of Gloucester v. Beach, 2 Pick. (Mass.) 60; Plimpton v. Converse, 44 Vt. 158; Strong v. Wales, 50 Vt. 361; Burnham v. McQuesten, 48 N. H. 446.

In Kilburn v. Adams, supra, it appeared that the plaintiff owned lands adjoining property upon which was situated an academy, and claimed a right of way from his land over the academy lot to a highway. The academy land had been left open during many years and crossed in all directions by the general public. The court held that, although the plaintiff made more frequent use of the land than others, such use was not inconsistent with the proprietor's rights, and could not be the basis of an easement by prescription, in the absence of some decisive act on the plaintiff's part indicating a use separate and exclusive from the general use. To the same effect in principle is the recent decision of this court in N. Y. Central & H. R. R. R. Co. v. Village of Ossining, 141 App. Div. 765, 126 N. Y. Supp. 517, wherein it was held that the mere use of a way opened to the public by a railway company did not operate to dedicate the land to the public as a highway.

Within the principle of the cases herein referred to, I think that the plaintiff's use was permissive, rather than adverse, and not such as would constitute notice to the respondent of a claim adverse to its ownership of the property, and I agree with the language of the learned trial justice (Mr. Justice Mills) in the opinion rendered herein at the Special Term, viz.:

"It does not appear to me that a railroad company, by leaving its lands about one of its stations open and unfenced in all directions, is submitting to an adverse use of a part of them simply because a neighboring landowner drives or walks over such part to and from his own premises. No authority expressly to the contrary is cited. The instances of such collateral user con-

tinued for a much longer period than 20 years are abundant throughout the country, and it seems quite remarkable that no precedent directly upon the point has been established, or at least found by counsel. The user by plaintiff and her predecessor must be deemed, upon the evidence, to have been permissive and under an implied license, and not adverse."

It may be further noted that the appellant has no right of way by necessity, as the original Barker deed grants a right of way to the highway distinct from the way claimed by prescription.

[4, 5] The failure of the plaintiff and her predecessor to build and maintain fences along the respondent's line, pursuant to the covenant in the Barker deed, does not tend to establish an adverse user. The covenant was an affirmative one, running with the land, and the operation of the statute of limitations would not commence until demand and refusal. Bronson v. Coffin, 108 Mass. 175, 188, 11 Am. Rep. 335; Talmadge v. R. & S. R. R. Co., 13 Barb. 493, 498. The alleged breach of this covenant would constitute such a wrongful act as could not be the foundation for a prescriptive right. Thomas v. Marshfield, 13 Pick. (Mass.) 240, 248.

The judgment should be affirmed.

Judgment affirmed, with costs. All concur.